# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL JONES, | * |
| Plaintiff, | * |
| vs. | * CIVIL ACTION NO. 24-00042-KD-B |
| BUCCI EXPRESS, INC., *et al.*, | * |
| Defendants. | * |

## REPORT AND RECOMMENDATION

This action is before the Court on Plaintiff Michael Jones' motion to remand. (Doc. 8). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for consideration and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Plaintiff's motion to remand be **GRANTED**.

### I. BACKGROUND

This personal injury action arises from an October 2022 motor vehicle collision in Mobile County, Alabama. (Doc. 1-2). On December 8, 2023, Plaintiff Michael Jones ("Jones") commenced this action by filing a complaint against Defendant Bucci Express, Inc. ("Bucci") and Defendant Arjun Santiago Monroe ("Monroe") (collectively, "Defendants") in the Circuit Court of Mobile

County, Alabama.[1]  (Id.).

The complaint alleges that on or around October 14, 2022, Monroe was operating a tractor trailer, within the line and scope of his employment with Bucci, when he crashed into the vehicle driven by Jones.  (Doc. 1-2 at 4-5).  The complaint alleges that Monroe "failed to maintain a proper lookout for other vehicles" and "failed to yield the right of way to" Jones, veering into his lane of travel, striking and injuring him.  (Id. at 5).  Jones states that he "was caused to suffer personal injuries and damages in that he was made sick, sore, and lame[,]" and that he experienced "pain and suffering," "mental anguish[,] and will so suffer in the future."  (Id.).  He asserts four causes of action: (1) negligence; (2) wantonness; (3) respondeat superior; and (4) negligent & wanton hiring, training, supervision & retention.  (Doc. 1-2).  For relief, Jones requests compensatory and punitive damages plus interest and costs.

Bucci waived service of process on January 12, 2024, and on February 8, 2024, Bucci removed the action to this Court.  (Doc.

---

[1] The complaint also names several fictious defendants, "a practice which is allowed under the state procedural rules" but "is not generally recognized under the Federal Rules of Civil Procedure." Collins v. Fingerhut Companies, Inc., 117 F. Supp. 2d 1283, 1283 n.1 (S.D. Ala. 2000); see also 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

1). In the notice of removal, Bucci asserts the Court has original diversity jurisdiction because the parties' citizenship is completely diverse and the amount in controversy "exceeds $75,000 exclusive of interest and costs, both as facially apparent from the complaint itself and because of the additional evidence submitted with this notice of removal." (Id. at 3). Specifically, Bucci asserts: "The plaintiff's alleged injuries stated in the complaint and detailed in the settlement letter, the prayer for punitive damages, and the fact that a trucking company and its driver are defendants together show that the value of the case, from the plaintiff's standpoint, exceeds $75,000." (Id. at 6).

Shortly thereafter, Defendants filed partial motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (See Docs. 3, 7). On March 4, 2024, Jones filed the instant motion to remand this action to state court. (Doc. 8). The undersigned entered a briefing schedule and held the motions to dismiss in abeyance pending a ruling on the motion to remand. (Doc. 10). Jones does not dispute that this action is between citizens of different states, but he argues that Bucci has failed to establish by a preponderance of the evidence that the amount in controversy is in excess of $75,000. (Doc. 8). Monroe joined Bucci in its response opposing the motion to remand (Doc. 11), and Jones filed a timely reply (Doc. 14). Thus, the motion is fully briefed and ripe for resolution.

## II. LEGAL STANDARDS

"On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1343 (11th Cir. 2009). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." Univ. of S. Ala. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." Id.

A defendant may remove a case from state to federal court if the case could have been brought in federal court in the first instance. See 28 U.S.C. § 1441(a). This includes actions where the federal court has jurisdiction under 28 U.S.C. § 1332(a), which requires complete diversity of citizenship between the plaintiff and defendant and an amount in controversy that exceeds $75,000, exclusive of interest and costs. See Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001); 28 U.S.C. § 1332(a). The amount in controversy "is less a prediction of how much the plaintiffs are ultimately likely to recover, than it is an estimate of how much will be put at issue during the litigation; in other words, the amount is not discounted by the chance that the plaintiffs will lose on the merits." S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1315 (11th Cir. 2014).

**III. DISCUSSION**

The parties do not dispute that there is complete diversity of citizenship. Rather, Jones argues that this action must be remanded because Bucci has failed to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. (See Docs. 8, 14).

In its notice of removal, Bucci relies on the following information to establish the requisite amount in controversy:

1) The nature of the complaint's allegations;

2) A letter from Jones' counsel describing his injuries and requesting that the parties engage in settlement discussions (Doc. 1-5);

3) Jones' short-term disability lien for $5,107.04;

4) Jones' request for punitive damages.

(See Doc. 1). Bucci also attached to its response in opposition to the motion to remand 200 pages of Jones' medical records. (Doc. 11-1). According to Bucci, the "alleged injuries stated in the complaint, and detailed in the settlement letter and medical records, as well as the prayer for punitive damages, together show that the value of the case . . . 'more likely than not' exceeds $75,000." (Doc. 11 at 8).

Turning first to the nature of the complaint's allegations, the undersigned finds that it does not provide sufficient information to render it "facially apparent" that the amount in controversy requirement is satisfied. Nor does the complaint

5

assist the Court with ascertaining the value of Jones' damages. Each count contains identical *ad damnum* clauses demanding judgment for "compensatory and punitive damages, plus interest and costs[.]" (See Doc. 1-2). But the complaint lacks specialized information regarding the severity of the injuries Jones sustained, only stating that he "was caused to suffer injuries to his person that were and are attended by physical pain and suffering, past, present, and future; and, . . . [that] [he] will be caused in the future to incur medical expenses in an effort to treat and cure his injuries." (See Doc. 1-2 at 6, 8). Such generalized allegations regarding physical injuries "carry little weight[,]" because "'severe' injuries to one person could easily be only minor injuries to all others." Kilpatrick v. Testani, 2023 U.S. Dist. LEXIS 197844, at *11, 2023 WL 7287243, at *4 (N.D. Ala. Nov. 3, 2023) (quoting Kiddd-Hicks v. Bellemere Props., LLC, 2018 U.S. Dist. LEXIS 171720, at *5, 2018 WL 4840113, at *2 (N.D. Ala. Oct. 4, 2018)).

Moreover, it is well-settled that vaguely "'listing categories of damage does not satisfy' a removing defendant's burden of establishing the amount in controversy." See Ralph v. Zaro Transp., LLC, 2021 U.S. Dist. LEXIS 86438, at *11-12, 2021 WL 2325338, at *5 (S.D. Ala. May 5, 2021), report and recommendation adopted, 2021 U.S. Dist. LEXIS 106184, 2021 WL 2323715 (S.D. Ala June 7, 2021) (citing Robinson v. Clayton, 2012 U.S. Dist. LEXIS

171503, at *4, 2012 WL 6028940, at *2 (S.D. Ala. Dec. 3, 2012)); Collinsworth v. Big Dog Treestand, Inc., 2016 U.S. Dist. LEXIS 84123, at *9, 2016 WL 3620775, at *3 (S.D. Ala. June 29, 2016) ("Plaintiffs' allegations of mental anguish are too vague and speculative for the undersigned to find that their claims surpass the jurisdictional threshold."); Lambeth v. Peterbilt Motors Co., 2012 U.S. Dist. LEXIS 67591, at *10, 2012 WL 1712692, at *3 (S.D. Ala. May 15, 2012) ("While the back injury is characterized as 'serious,' . . . . We simply do not know-or have any basis for inferring from the pleadings-anything about how severe, permanent, debilitating or painful the injury might be; how extensive, costly, or traumatic the course of treatment was, is or might be; or whether and to what extent the injury did, does or will constrain [plaintiff's] work or life activities."); Hill v. Toys "R" Us, Inc., 2010 U.S. Dist. LEXIS 100893, at *1-2, 2010 WL 3834532, at *1, *3 (S.D. Ala. Sept. 24, 2010) (remanding case to state court for failure to prove the amount in controversy where the plaintiff alleged that she suffered back, neck, arm, and head injuries, that she had experienced and continued to experience pain and suffering, emotional distress, and mental anguish, and that she had incurred ongoing medical expenses).

Bucci relies on two cases for its proposition that general allegations of bodily injury stated in the complaint are sufficient to satisfy the amount in controversy requirement. (See Doc. 11 at

7

6-7). But those cases are easily distinguishable. For instance, in Eason v. Int'l Paper Co., the plaintiffs sought damages for "permanent bodily injury, current and future medical bills, current and future pain and suffering, lost wages, and loss of consortium." 2019 U.S. Dist. LEXIS 243789, at *2, 2019 WL 13207584, *1 (N.D. Ga. Apr. 10, 2019). Here, however, Jones has not sought damages for lost wages or loss of consortium, nor does he allege he sustained "permanent bodily injury."

Likewise, in Johnson v. Blackburn, the plaintiff sustained injuries to her head, neck, shoulders, knees, and lower back following a motor vehicle collision with the operator of a tractor trailer. 2016 U.S. Dist. LEXIS 138108, at *4, 2016 WL 5816114, at *2 (N.D. Ala. Oct. 5, 2016). The plaintiff claimed her injuries made it impossible for her to "drive, take care of her grandchildren, have intimate relations with her spouse, attend church, or pursue other normal activities of her daily life." Id., 2016 U.S. Dist. LEXIS 138108, at *7, 2016 WL 5816114, at *3. In fact, the plaintiff continued to suffer from her injuries over a year and three months after the accident. Id. Due to her "severe physical injuries, her claims for punitive damages, property damage, and mental anguish[,]" the court found that the defendants had shown by a preponderance of the evidence that the jurisdictional threshold was satisfied. Id., 2016 U.S. Dist. LEXIS 138108, at *7-8, 2016 WL 5816114, at *3. In contrast, here, Jones

has not claimed property damage, has resumed work, and does not claim he is unable to participate in daily activities.

Furthermore, although Jones alleges that he will incur future medical expenses, there is no information before the Court establishing the nature, extent, or likely cost of such treatment. Thus, the potential cost of any future medical expenses is too speculative to include in the Court's determination of the amount in controversy. <u>See</u>, <u>e.g.</u>, <u>Newbolds v. Amica Mut. Ins. Co.</u>, 2019 U.S. Dist. LEXIS 34447, at *3-4, 2019 WL 1035854, at *1 (M.D. Fla. Mar. 5, 2019) (finding that "the unspecified cost" of plaintiff's "hypothetical future medical expense is too speculative to include in the Court's jurisdictional discussion"); <u>Spence v. Fam. Dollar Stores of Ga., LLC</u>, 2021 U.S. Dist. LEXIS 120586, at *6, 2021 WL 2660145, at *3 (N.D. Ga. June 29, 2021) ("That Plaintiff may, on some unknown date in the future, receive medical treatment is too speculative to find that this action surpasses the jurisdictional threshold.").

Bucci also contends that the letter from Jones' counsel to engage in settlement negotiations provides further support that the amount in controversy exceeds $75,000. (<u>See</u> Doc. 1-5). Although the settlement letter provides particularized information regarding Jones' injuries, it does not characterize his injuries as so severe as to approach $75,000 in damages. Notably, the letter does not suggest that Jones requires future medical

9

treatment.  Rather, it indicates that Jones was treated with physical therapy and returned to work:

> Mr. Jones was transported to Mobile Infirmary for neck, back, and shoulder pain and was discharged with instructions to return back to the emergency department if needed. Mr. Jones [was] treated with Dr. Suanne White-Spunner, MD of Alabama Orthopaedic Clinic when he started experiencing dizziness and headaches, other complaints including immediate cervical, thoracic and lumbar pain with occasional numbness and tingling of both his hands. Images were taken of his cervical, thoracic, and lumbar and after reviewing it was determined he had a strain of neck muscle, strain of thoracic back region, and strain of lumbar region. Mr. Jones was instructed to do physical therapy. Whereas he completed approximately seventeen (17) physical therapy sessions and was discharged and returned to work.

| Provider | Amount |
| --- | --- |
| Newman's Medical Services | $1,460.00 |
| Mobile Infirmary | $773.82 |
| Baldwin Emergency Physicians | $680.00 |
| Alabama Orthopaedic Clinic | $6,077.00 |
| **TOTAL** | **$8,990.82** |

(Doc. 1-5).

Jones points out that Blue Cross and Blue Shield of Alabama has a subrogation lien for $1,982.08, and that he has other unpaid medical bills in the amount of $1,928.66. (Doc. 8 at 5; Doc. 8-1). In response, Bucci asserts that the collateral-source rule will allow Jones to submit the "retail" value of the medical services he received and not simply the discounted insurance payment amount. (Doc. 11 at 8). However, Bucci does not offer evidence detailing what those expenses entail beyond the values

10

provided above; thus, this contention is afforded little weight in the Court's calculation of the amount in controversy. (Doc. 11 at 8).

Bucci also asserts that Jones' request for punitive damages indicates that the amount in controversy satisfies the jurisdictional threshold. (Doc. 1 n.3). "While a request for punitive damages does not automatically establish the amount-in-controversy, a court may properly consider punitive damages in the evaluation of whether a defendant has shown that the amount-in-controversy is satisfied." Hogan v. Mason, 2017 U.S. Dist. LEXIS 55055, at *9, 2017 WL 1331052, at *3 (N.D. Ala. Apr. 11, 2017). "But there is nothing talismanic about such a demand that would *per se* satisfy the amount-in-controversy requirement and trigger federal subject matter jurisdiction." Lambeth, 2012 U.S. Dist. LEXIS 67591, at *14-15, 2012 WL 1712692, at *4.

Here, Bucci has provided no documentation or evidence for which the Court could assign any potential value for a punitive damages claim; and the allegations in the complaint pertaining to Monroe's conduct do not appear so egregious or reprehensible as to warrant a substantial punitive damages award, nor has Bucci made such a showing. Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1064 (11th Cir. 2010) (noting that, in assessing punitive damages under Alabama law, "the worse the defendant's conduct was, the greater the damages should be"); Arrington v. State Farm Ins. Co., 2014

U.S. Dist. LEXIS 89264, at *22, 2014 WL 2961104, *7 (M.D. Ala. July 1, 2014) ("'[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.'") (quoting State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003)).

In sum, the undersigned finds that Bucci has failed to show by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs. The only values that provide any evidentiary support for Jones' claimed damages (medical bills and short-term disability lien) are far from the jurisdictional minimum. Because the law favors remand when doubt exists, the Jones' motion to remand should be granted and this action should be remanded to state court. See Univ. of S. Ala., 168 F.3d at 411.

### IV. CONCLUSION

Based on the foregoing, the undersigned finds that the Court lacks subject matter jurisdiction over this case under 28 U.S.C. § 1332 because the requisite amount in controversy is not satisfied. Accordingly, the undersigned **recommends** that Jones' motion to remand (Doc. 8) be **granted**, and that this action be remanded back to the Circuit Court of Mobile County, Alabama pursuant to 28 U.S.C. § 1447(c).

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **22nd** day of **July, 2024.**

                                          **/s/ SONJA F. BIVINS**
                                    **UNITED STATES MAGISTRATE JUDGE**